# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

---

In Re:

**PAYROLLAMERICA, Inc.,**

            **Debtor.**

**Bankruptcy Case
No. 10-00800-JDP**

---

**PHILADELPHIA INDEMNITY
INSURANCE COMPANY,**

            **Plaintiff,**

**vs.**

**PAYROLLAMERICA, INC.,
M. WAYNE DAVIS, II and
STEPHANIE W. DAVIS, husband
and wife, and CHRISTOPHER
BARRERA , an individual,**

            **Defendants.**

**Adv. Proceeding
No. 10-6078-JDP**

---

# MEMORANDUM OF DECISION

---

MEMORANDUM OF DECISION - 1

Appearances:

> Josh Everett, ELAM & BURKE, Boise, Idaho Attorney for Plaintiff.

> Cliff Brown and Bo Davies, HOLZER & EDWARDS, Chartered, Boise, Idaho Attorneys for Defendants PayrollAmerica and Jeremy Gugino, Chapter 7 Trustee.

## Introduction

Philadelphia Indemnity Insurance Co. ("PIIC") insured chapter 7[1]

debtor PayrollAmerica, Inc. ("Debtor"), a payroll processing services

company, its officers, directors, and employees (collectively, with Debtor,

"Insureds"), under an Accountants Professional Liability Insurance Policy

("the Policy").[2] Dkt. No. 24-1. Under the Policy, PIIC had a duty to defend

the Insureds against claims for negligent acts, errors, or omissions in the

performance of professional services. *Id.* PIIC also had a duty to

indemnify the Insureds as to damages resulting from any such claims. *Id.*

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

[2] Policy number PHSD325573.

MEMORANDUM OF DECISION - 2

Several of Debtor's former clients sued the Insureds when Debtor did not provide contracted-for services.  In response, Debtor filed for chapter 7 bankruptcy protection.  PIIC initiated this adversary proceeding to determine its duties under the Policy, and has now moved for summary judgment, seeking a declaration by the Court that it has no duty to defend or indemnify Debtor in those lawsuits, or in any future action based on the same premise.  Debtor and its chapter 7 case trustee, Jeremy Gugino ("Trustee"), filed a cross-motion for summary judgment, asking the Court to declare PIIC is indeed obligated to defend and indemnify Debtor in all such actions under the Policy.  A hearing on the parties' motions was held August 23, 2011, and the Court took both summary judgment motions, as well as two PIIC motions to strike,[3] under advisement.  Having considered the record, the parties' submissions, and applicable law, this Memorandum disposes of all pending motions.  Rules 7052, 9014.

---

[3] PIIC's Motion to Strike Paragraph 3 of the Affidavit of Clifford Brown, Dkt. No. 33; PIIC's Motion to Strike the Second Affidavit of Clifford Brown, Dkt. No. 40.

MEMORANDUM OF DECISION - 3

**Background**[4]

**I.      The Policy.**

Under the Policy, which covered the Insureds from May 1, 2008, to

May 1, 2009, PIIC has a duty to indemnify the Insureds against damages

incurred as a result of any negligent act, error, or omission in the

performance of professional services.[5]  Dkt. No. 24-1.  In addition, the

Policy imposes the duty on PIIC to defend the Insureds against covered

claims.[6]  *Id.*  To assist in understanding the Policy, certain terms as used

---

[4]  Except where otherwise indicated, the facts discussed herein appear undisputed in the record.

[5]  I.  COVERAGE — PROFESSIONAL LIABILITY

> The Company will pay on behalf of the INSUREDS those sums in excess of the deductible which the INSUREDS become legally obligated to pay as DAMAGES as a result of CLAIMS first made against the INSUREDS by reason of a negligent act, error or omission in the performance of PROFESSIONAL SERVICES, provided the CLAIM is first made during the POLICY PERIOD and written report of the CLAIM is received by the Company during the POLICY PERIOD or within sixty (60) days thereafter.

Dkt. No. 24-1 (capitalization in original).

[6]  II.  DEFENSE, INVESTIGATION AND SETTLEMENT OF CLA[I]MS

(continued...)

MEMORANDUM OF DECISION - 4

therein are expressly defined.  *Id.*  As relevant here, those definitions

include:

> I.  "CLAIM" MEANS:  a demand made upon any
> INSURED for DAMAGES, including, but not limited to,
> service of suit or institution of arbitration proceedings
> against any INSURED.
>
> All CLAIMS arising out of the same act, error or
> omission, or acts, errors or omissions which are
> logically or causally connected in any way shall
> be deemed as a single CLAIM.  All such CLAIMS
> whenever made shall be considered first made on
> the date on which the earliest CLAIM arising out
> of such act, error or omission was first made and
> all such CLAIMS are subject to the same limits of
> liability and deductible.
>
> ****

---

[6](...continued)

> As respects such CLAIMS which are covered by this
> policy, the Company shall:
>
> A.  have the right and duty to defend, including
> selection of counsel and arbitrators, in any
> INSURED'S name and on any INSURED'S
> behalf any CLAIM for DAMAGES against any
> INSURED, even if such CLAIM is groundless,
> false or fraudulent and shall have the right to
> make such investigation, negotiation and
> settlement, subject to II.B. below, of any
> CLAIM as it deems expedient;
>
> ****

Dkt. No. 24-1.

MEMORANDUM OF DECISION - 5

VI.    "INSURED" MEANS:
　　A.    the NAMED INSURED;[7]
　　B.    any PREDECESSOR FIRM OR
　　　　SUCCESSOR FIRM;
　　C.    any past or present partner, officer,
　　　　director, stockholder or employee of the
　　　　NAMED INSURED or entity specified in
　　　　item VI.B. above, but only as respects
　　　　PROFESSIONAL SERVICES rendered on
　　　　behalf of the NAMED INSURED, or any
　　　　PREDECESSOR FIRM;
　　D.    any accountant or accounting firm while
　　　　performing PROFESSIONAL SERVICES
　　　　for, and under contract with the NAMED
　　　　INSURED, PREDECESSOR FIRM or
　　　　SUCCESSOR FIRM;

　　****

*Id.*  Finally, the Policy also includes certain exclusions from coverage.  *Id.*

Among those exclusions are:

　　This policy does not apply to any CLAIM or
　　DAMAGES arising out of:
　　****
　　E.    any dishonest, fraudulent, criminal,
　　　　malicious or knowingly wrongful or
　　　　reckless act, error or omission of any
　　　　INSURED;

---

[7] The Policy's named insured is "Payroll America, Inc. & Payroll American [sic] dba Xpress Flex."  Dkt. No. 24-1.

MEMORANDUM OF DECISION - 6

F.    any actual or alleged violations of state or
federal antitrust, price fixing, restraint-of-
trade, copyright or deceptive trade practice
laws, rules or regulations;

H.    any INSURED gaining any personal profit
or advantage to which the INSURED was
not legally entitled;

M.    conversion, misappropriation or improper
commingling of client funds held for the
benefit of a client;

****

*Id.*

## II.    History.

Debtor provided payroll processing services, including tax

management services, to its clients.  Dkt. No. 23.  Its tax management

services consisted of calculating clients' tax liabilities, withdrawing funds

sufficient to pay those liabilities directly from clients' bank accounts, and,

when the tax liabilities became due, paying the funds to the appropriate

taxing entities.  *Id.*  To complete those services, Debtor entered into

individual contracts with each of its clients, identifying the services to be

provided, and authorizing Debtor to access the clients' bank accounts.

Dkt. No. 27.

MEMORANDUM OF DECISION - 7

Many of the transactions between Debtor and its clients were conducted through a regulated interbank transfer system ("ACH system"). *See id.* Debtor utilized a third party to assist it in processing transactions through the ACH system. During the Policy's coverage period, Debtor began using Data Processing Service of Georgia, Inc. ("DPS"), for that purpose. *Id.*

Initially, DPS and Debtor's arrangement allowed Debtor to continue clearing all transactions through its own bank accounts, which allowed Debtor to track its clients' funds as they were processed by DPS. *Id.* Beginning in late 2008, however, DPS informed Debtor that all transactions would be cleared through an account owned solely by DPS. *Id.* Debtor agreed to this new procedure, and, as a consequence, lost oversight of the transactions completed by DPS. *Id.*

In early 2009, Debtor announced a sale of its client accounts to another payroll servicing company, Automatic Data Processing ("ADP"). *Id.* Shortly after that announcement, DPS required Debtor to deposit approximately $1,200,000 into a "reserve fund," ostensibly to provide DPS

MEMORANDUM OF DECISION - 8

a buffer against potential "insufficient funds" transactions as Debtor

transferred its clients to ADP.[8] *Id.* The reserve requirement was later

increased to $2,200,000. *Id.* Debtor used its clients' funds, which had been

withdrawn to satisfy upcoming tax obligations, to fund the reserve

account.[9] *Id.* The reserve funds were kept in Debtor's designated DPS

clearing account, where they were commingled with other funds. *Id.*

When Debtor later sought to have DPS credit it the $2,200,000 in

reserve funds so that it could pay its clients' first quarter of 2009 tax

payments, DPS claimed to have previously provided Debtor $2,200,000 in

credits to satisfy prior tax obligations. Dkt. No. 23. As a result, Debtor

was unable to satisfy all of its clients' outstanding tax liabilities, and

approximately $4,000,000 to $4,800,000 in client taxes liabilities were not

--------

[8] Apparently, if an account had insufficient funds to complete a particular ACH system transaction, DPS was potentially subject to penalties. *See, e.g.,* Dkt. No. 28-4 at 62:13–63:22. The reserve fund was intended to provide DPS with protection against the possibility of insufficient funds transactions.

[9] Debtor did so, apparently, because it expected DPS to eventually credit the $2,200,000 in the reserve account to pay outstanding tax obligations. *See* Dkt. No. 23.

MEMORANDUM OF DECISION - 9

paid.  Dkt. Nos. 23, 27.

As they began incurring penalties due to the unpaid taxes, several of

Debtor's clients sued Debtor.  *See* Dkt. Nos. 23, 27.  Debtor filed for chapter

7 bankruptcy on March 30, 2010, as a result of its ongoing financial

difficulties.  Bankr. No. 10-00800-JDP, Dkt. No. 1.

### III.    The adversary proceeding.

This adversary proceeding was initiated when PIIC filed a

Complaint for Declaratory Relief,[10] in which it sought a determination that

it has no duty to defend or indemnify Debtor in any lawsuit against

Debtor for failure to pay Debtor's clients' tax obligations.  Adv. No. 10-

6078-JDP, Dkt. No. 1-3 at 8–22.  Trustee was added to the adversary

proceeding as a party defendant to represent the interests of Debtor's

bankruptcy estate.  Dkt. No. 20.  PIIC has filed a Motion for Summary

Judgment, and Debtor and Trustee have filed a cross Motion for Summary

Judgment.

---

[10]  PIIC's complaint was initially filed in the Fourth Judicial District Court
of Idaho.  It was later removed to the U.S. District Court for the District of Idaho,
and, finally, referred to this Court.  Dkt. Nos. 1, 17.

MEMORANDUM OF DECISION - 10

A.    <u>PIIC's Motion for Summary Judgment</u>.

On May 6, 2011, PIIC moved for summary judgment arguing the

Insureds are not covered by the Policy for "any current or future claims."

Dkt. No. 25.  The motion was supported by a Memorandum of Points and

Authorities, Dkt. No. 26, a Statement of Undisputed Facts, Dkt. No. 27, and

the Affidavit of Joshua S. Evett with attached exhibits, Dkt. No. 28.

Neither the pleadings, the discovery and disclosure materials, nor the

affidavit and exhibits, provide specific facts about some of the allegations

in (1) the complaints against Debtor or (2) any judgment or settlement

against Debtor.

Debtor and Trustee filed an opposition to PIIC's motion on August

9, 2011.  Dkt. No. 32.  PIIC replied to that opposition on August 16, 2011.

Dkt. No. 39.  A hearing was held on PIIC's motion on August 23, 2011.

B.    <u>Debtor and Trustee's Motion for Summary Judgment</u>.

Debtor and Trustee filed their own motion for summary judgment

on May 6, 2011, requesting the Court to decide that PIIC has a duty (1) to

defend Debtor in any action relating to its failure to pay clients' tax

MEMORANDUM OF DECISION - 11

obligations; (2) to reimburse Debtor for defense costs and fees incurred

defending actions that should have been defended by PIIC; and (3) to

indemnify Debtor for sums incurred as damages from claims relating to

Debtor's failure to pay clients' tax obligations.  Dkt. No. 21.  Debtor and

Trustee's motion is supported by a Memorandum, Dkt. No. 22, a

Statement of Undisputed Facts, Dkt. No. 23, and an Affidavit of Debtor

and Trustee's attorney, Clifford Brown ("Brown"), with attached exhibits,

Dkt. No. 24.

Among the exhibits attached to Brown's affidavit are copies of nine

complaints filed against Debtor in various state and federal court actions

due to Debtor's non-payment of clients' taxes.  Dkt. No. 24-3.  The affidavit

also included a statement by Brown that he had represented Debtor in

various of those and other lawsuits, that PIIC refused to indemnify Debtor

in each of those cases, and that the dollar amount of judgments entered

against Debtor in those cases was $454,478.98.  *See* Dkt. No. 24.  PIIC

moved to strike Brown's statements about the cases in which he had

represented Debtor, and the judgments associated therewith, asserting

MEMORANDUM OF DECISION - 12

they are inadmissable pursuant to Fed. R. Civ. P. 56(c)(4).  Dkt. Nos. 33, 34.

Debtor and Trustee's Statement of Undisputed Facts recites general

facts about Debtor, its clients, DPS, and the relationship and history of

those entities.  *See* Dkt. No. 23.  Included among the facts is:

> Judgments have been entered against [Debtor] in
> several cases.  The judgments entered against
> [Debtor] in Idaho cases equal $454,478.98.
> Discovery responses received from [PIIC] show
> an additional judgment in the state of
> Washington totaling $213,888.60.

*Id.* at ¶ 25.  Also, Debtor and Trustee made a general assertion that Debtor

"tendered the defense of the lawsuits to [PIIC] but [PIIC] has refused to

provide a defense or indemnification."  *Id.* at ¶ 24.

PIIC opposed Debtor and Trustee's Statement of Undisputed Facts.

Dkt. No. 35.  Specifically, PIIC opposed, as vague, Debtor and Trustee's

statement that Debtor had tendered certain, unspecified lawsuits to PIIC to

defend those suits.  *Id.* at ¶ 24.  PIIC also disputed Debtor and Trustee's

statements about judgment awards because they did not support those

MEMORANDUM OF DECISION - 13

assertions with evidence.  *Id.* at ¶ 25.  PIIC argues the vague and

unsupported statements lack the necessary foundation to support

admission, and should be excluded.  *See id.* at ¶¶ 24, 25.

PIIC opposed Debtor and Trustee's motion for summary judgment

on August 9, 2011.  Dkt. No. 36.  In apparent response to that opposition,

and to PIIC's motion to strike portions of Brown's first affidavit, Brown

filed a second affidavit, with exhibits, on August 16, 2011.  Dkt. No. 37.  In

that second affidavit, Brown listed the specific state lawsuits in which he

provided representation to Debtor.  *Id.*  Brown also attached copies of five

different orders granting judgment in favor of Debtor's clients in various

state court suits.  Dkt. Nos. 37-1, 37-2, 37-3, 37-4, 37-5.  In other words, he

provided the specificity and evidentiary support PIIC asserted was lacking

from Debtor and Trustee's prior filings.  PIIC moved to strike Brown's

second affidavit, however, on the grounds that it was untimely under the

Court's local rules.  Dkt. Nos. 40, 41.

## IV.   The lawsuits.

Several of Debtor's clients sued Debtor to recover the tax obligations

MEMORANDUM OF DECISION - 14

and penalties they incurred when Debtor did not complete contracted-for

tax management services.  PIIC's Statement of Undisputed Facts indicates

there have been a total of fifteen lawsuits (ten in Idaho and five in

Washington) filed to date.  Dkt. No. 27.  PIIC did not, however, provide

copies of the complaints in those suits, and did not provide evidence

regarding the allegations made or causes of action asserted by the

plaintiffs in those complaints.  PIIC also did not provide the Court with

any judgment-related information.

Debtor and Trustee, on the other hand, provided the Court with

copies of the complaint for nine lawsuits to support their Motion for

Summary Judgment.  *See* Dkt. No. 24-3.  They also provided copies of

judgments issued in three of those actions, as well as copies of two

judgments for which a copy of the complaint was not submitted to the

Court.  Dkt. Nos. 37-1, 37-2, 37-3, 37-4, 37-5.  The information contained in

those complaints and judgments is summarized below:

A. *Viking Bank v. Payroll America, Inc.* [sic]

Viking Bank and other plaintiffs ("Viking Bank Plaintiffs") filed a

MEMORANDUM OF DECISION - 15

Second Amended Complaint for Money Damages with the King County,

Washington, Superior Court on November 24, 2009.  Dkt. No. 24-3 at

45–55.  In that complaint, the Viking Bank Plaintiffs generally allege they

contracted with Debtor to provide payroll services, including the payment

of payroll taxes to certain taxing agencies; Debtor's services were to

include the making of payments through the ACH system to taxing

authorities; the Viking Bank Plaintiffs authorized Debtor to transfer funds

from their accounts to Debtor's bank account to fulfill its contractual

obligations; Debtor failed to pay the Viking Bank Plaintiffs' first quarter of

2009 tax liabilities, though sufficient funds to do so had been transferred to

Debtor; Debtor contracted with DPS, which required Debtor to place

monies into a reserve fund; Debtor transferred the Viking Bank Plaintiffs'

funds to the DPS reserve account without seeking or obtaining their

authorization; and the Viking Bank Plaintiffs incurred penalties due to

Debtor not paying their taxes.  *Id.*

    The Viking Bank complaint includes six causes of action:  breach of

contract; breach of fiduciary duty; conversion; unjust enrichment; fraud;

MEMORANDUM OF DECISION - 16

and violation of the Washington Consumer Protection Act.  *Id.*  In pleading

the breach of fiduciary duty cause of action, the Viking Bank Plaintiffs

assert Debtor owed them a fiduciary duty due to its ability to withdraw

funds from their bank accounts.  *Id.*  The complaint generally alleges

Debtor breached that duty by not properly stewarding funds from the

Viking Bank Plaintiffs' accounts to the appropriate taxing entities, and that

Debtor's breach proximately caused damage to the Viking Bank Plaintiffs.

*Id.*

> B.  *Housing Authority of Thurston County v. PayrollAmerica, Inc.*

The Housing Authority of Thurston County ("HATC") filed its

complaint with the Thurston County, Washington, Superior Court on

September 15, 2009.  Dkt. No. 24-3 at 56–61.  In that complaint, HATC

generally alleges it contracted with Debtor to perform payroll services; it

authorized Debtor to access and withdraw funds from its bank accounts;

during the first quarter of 2009, Debtor withdrew funds from HATC's

account to pay five different tax liabilities; Debtor did not pay any of those

liabilities; HATC incurred penalties because of the unpaid taxes; and

MEMORANDUM OF DECISION - 17

HATC paid some of the taxes to avoid further penalties.  *Id.*

HATC pleads five causes of action in its complaint, including:

breach of contract; breach of fiduciary duty; professional negligence;

unlawful conversion; and consumer protection act violation.  *Id.*  HATC's

breach of fiduciary duty cause of action alleges Debtor owed HATC a

duty, which Debtor breached.  *Id.*  The complaint later asserts that,

through Debtor's various acts and omissions, it proximately caused

damages, injury, and harm to HATC.  *Id.*  HATC's professional negligence

cause of action alleges Debtor was negligent and did not meet the standard

of care as a fiduciary, *i.e,* an accounting services provider or payroll

services provider, causing injury to HATC.  *Id.*

    C.  *Arrow Rock International, Inc. v. PayrollAmerica, Inc.*

Arrow Rock International, Inc., and other plaintiffs (ARI Plaintiffs),

filed a complaint with the Fourth Judicial District Court of Idaho on July

20, 2009.  Dkt. No. 24-3 at 19–39.  Therein, the ARI Plaintiffs generally

allege they contracted with Debtor to provide tax filing services; for a fee,

Debtor obtained funds from the ARI Plaintiffs, and paid their tax liabilities

MEMORANDUM OF DECISION - 18

from those funds; Debtor collected a fee and withdrew funds to pay the

ARI Plaintiffs' first quarter of 2009 tax obligations; Debtor never paid those

taxes; and the ARI Plaintiffs paid the taxing entities directly to satisfy their

tax burdens.  *Id.*

Each of the ARI Plaintiffs pleaded four causes of action:  breach of

contract; conversion; unjust enrichment; and breach of the implied

covenant of good faith and fair dealing.  *Id.*  The ARI Plaintiffs allege the

covenant of good faith and fair dealing was an implied contractual term.

*Id.*  In pressing their causes of action, the ARI Plaintiffs do not allege

Debtor breached a duty other than contractual duties, and they do not

allege Debtor was negligent in breaching those duties.  *Id.*

The Fourth Judicial District Court of Idaho entered a Second

Amended Judgment in favor of the ARI Plaintiffs in this action on January

11, 2010.  Dkt. No. 37-3.  In that judgment, the ARI Plaintiffs were awarded

a combined total of $31,883.96 in damages.[11]  *Id.*  The judgment itself does

---

[11]  Arrow Rock International, Inc., was awarded $21,639.74; Impact
Directories Washington, LLC, was awarded $6275.64; and Sunrise Publishing
(continued...)

MEMORANDUM OF DECISION - 19

not apportion the damages to any specific cause of action, and Debtor and

Trustee did not provide information indicating which of the four pleaded

causes of action served as the basis for the damages awarded.

D. *BluWater Consulting, LLC v. PayrollAmerica, Inc.*

BluWater Consulting LLC ("BluWater") filed its complaint in the

Fourth Judicial District Court of Idaho on August 3, 2009.  Dkt. No. 24-3 at

1–5.  In that complaint, BluWater generally alleges it contracted with

Debtor for the payment of quarterly tax obligations; it provided Debtor

funds sufficient to pay its first quarter of 2009 taxes; Debtor did not pay

those taxes; BluWater received a notice that it would incur penalties due to

its non-payment of taxes; and BluWater made payments directly to the

taxing entity to prevent the accrual of penalty charges.  *Id.*

BluWater included only one cause of action in its complaint:  breach

of contract.  *Id.*  In its pleading, BluWater alleges simply that Debtor was

contractually obligated to pay certain taxes, and that it did not pay those

---

[11](...continued)
Group, Inc., was awarded $3,968.58.  Dkt. No. 37-3.

MEMORANDUM OF DECISION - 20

taxes.  *Id.*

The Fourth Judicial District Court of Idaho entered an Order

Granting Stipulated Judgment on February 9, 2010.  Dkt. No. 37-1.  In the

Order, BluWater was awarded $58,321.05 in damages and pre-judgment

interest against Debtor.  *Id.*

     E.  *Radix Construction, Inc. v. PayrollAmerica, Inc.*

Radix Construction, Inc. ("Radix"),filed a complaint with the Third

Judicial District Court of Idaho on September 21, 2009.  Dkt. No. 24-3 at

6–13.  In that complaint, Radix generally alleges it contracted with Debtor

to pay its payroll and employment taxes; Debtor did not pay Radix's

payroll taxes for 2008; Debtor delegated some of its duties under its

contract with Radix to DPS without notifying Radix; and Radix incurred

penalties, costs, fees, and interest because of the unpaid taxes.  *Id.*

Radix alleges seven causes of action in its complaint, including:

breach of contract; conversion; unjust enrichment; breach of fiduciary

duty; breach of the implied covenant of good faith and fair dealing;

negligence; and "class action."  *Id.*  Under the negligence cause of action,

MEMORANDUM OF DECISION - 21

Radix asserts Debtor owed it a duty to act reasonably in meeting its

obligations under their contract; Debtor breached that duty by delegating

its contractual responsibilities to DPS, and by not ensuring DPS fulfilled its

obligations; and Debtor's breach was the proximate cause of damages. *Id.*

F. *Resources Online LLC v. PayrollAmerica, Inc.*

Resources Online, Inc. ("Resources Online"), filed a complaint with

the Fourth Judicial District Court of Idaho on November 23, 2009. Dkt.

No. 24-3 at 14–18. The complaint generally alleges Resources Online

contracted with Debtor for the payment of its quarterly payroll taxes;

Resources Online provided Debtor funds for the payment of its first

quarter of 2009 taxes; Debtor did not pay those taxes; Resources Online

paid its taxes directly to the taxing entities; and Resources Online incurred

penalties because its taxes were not paid on time. *Id.*

Resources Online alleges only one cause of action: breach of

contract. *Id.* Simply put, the complaint alleges that Debtor had a

contractual duty to pay Resources Online's taxes, and Debtor did not pay

those taxes. *Id.*

MEMORANDUM OF DECISION - 22

The Fourth Judicial District Court of Idaho entered an Order

Granting Stipulated Judgment against Debtor on February 3, 2010.  Dkt.

No. 37-2.  Resources Online was awarded $49,643.69 in damages and pre-

judgment interest.  *Id.*

 G.  *C.C. Filson Co. v. PayrollAmerica, Inc.*

C.C. Filson Co. ("Filson") filed a complaint with the U.S. District

Court for the District of Idaho around November 11, 2009.  Dkt. No. 24-3 at

40–44.  Therein, Filson generally alleges it contracted with Debtor to obtain

quarterly payroll tax filing services; it provided Debtor funds for the

payment of its first and second quarter of 2009 tax payments; Debtor did

not make those payments; Filson paid Debtor a fee to make those

payments; and Filson paid $10,204.96 in penalties to taxing entities because

its taxes were not paid.  *Id.*

Filson pleads four causes of action:  breach of contract; conversion;

unjust enrichment; and negligence.  *Id.*  As part of its negligence cause of

action, Filson alleges Debtor owed Filson a duty of care; it breached that

duty by not performing, or by negligently performing, agreed upon

MEMORANDUM OF DECISION - 23

services; and Debtor's breach caused Filson damages.  *Id.*

H. *Orca Bay Seafoods, Inc. v. PayrollAmerica, Inc.*

Orca Bay Seafoods, Inc. ("Orca Bay"), filed a complaint with the

King County, Washington, Superior Court on July 7, 2009.  Dkt. No. 24-3 at

62–65.  Orca Bay generally alleges it contracted with Debtor for the

payment of its payroll taxes;  it provided Debtor funds to pay its taxes;

Debtor did not pay those taxes; Orca Bay was assessed penalties by taxing

authorities; and Orca Bay paid the taxes and penalties to avoid further

injury to its business.  *Id.*

Orca Bay's complaint includes two causes of action:  breach of

contract; and violation of the Washington Consumer Protection Act.  *Id.*

Those causes of action do not suggest negligence on Debtor's part, and

neither is framed in the context of duty, breach, causation, and damages.

*Id.*

I. *At Home Care LLC v. Payroll America, Inc.* [sic]

At Home Care LLC ("At Home Care") filed a complaint with the

King County, Washington, Superior Court on December 1, 2009.  Dkt. No.

MEMORANDUM OF DECISION - 24

24-3 at 66–73.  The complaint generally alleges At Home Care contracted

with Debtor to obtain tax payment services; At Home Care authorized

Debtor to withdraw funds from its bank account; At Home Care provided

Debtor sufficient funds for the payment of its first quarter of 2009 taxes;

Debtor did not pay those taxes, did not notify At Home Care that it had

not paid the taxes, and did not return unpaid funds to At Home Care; and

At Home Care incurred costs and damages as a result of the unpaid taxes.

*Id.*

At Home Care alleges six causes of action:  breach of contract;

negligence; conversion; unjust enrichment; breach of fiduciary duties; and

violation of the Consumer Protection Act - RCW 19.86 *et. seq.  Id.*  In its

negligence claim, At Home Care alleges Debtor owed it several duties,

breached those duties, and the breaches proximately caused At Home

Care's damages.  *Id.*  In addition, At Home Care's breach of fiduciary

duties cause of action alleges Debtor had a duty, which it breached, and

the breach caused At Home Care to be damaged.  *Id.*

     J.  *The Masonry Center, Inc. v. PayrollAmerica, Inc.*

MEMORANDUM OF DECISION - 25

The Court was not provided a copy of the complaint in this action.

However, on March 22, 2010, the Fourth Judicial District Court of Idaho entered a Judgment against Debtor, in which it awarded the following damages:  $22,050.61 to Plaintiff The Masonry Center, Inc.; $2,679.34 to Plaintiff Orchard Partners, LLP; $46,999 to Plaintiff Boise Surgical Group, P.S.; and $136,954.78 to Plaintiff Syringa Bank.  Dkt. No. 37-4.  The judgment does not indicate the legal basis for the awarded damages, and the Court has not been provided any other information indicating the basis for those awards.

K.  *HSI Corporation v. PayrollAmerica, Inc.*

The Court was not provided a copy of the complaint in this case.

On January 27, 2010, the Fourth Judicial District Court of Idaho issued an Order Granting Stipulated Judgment, in which it awarded the following amounts in damages and pre-judgment interest against Debtor: $19,661.50 to Plaintiff HSI Corporation; $2,736.89 to Plaintiff HSI Accessories, Inc.; $5,346.27 to Plaintiff Metal Products West, Inc.; and $70,305.38 to Plaintiff Home-Style Industries, Inc.  Dkt. No. 37-5.  The

MEMORANDUM OF DECISION - 26

judgment does not indicate the legal basis for the awarded damages, and

no other information indicating that basis was provided the Court.

## Discussion

## I.    Summary judgment standard.

Summary judgment is appropriate "if the pleadings, the discovery

and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law."  Rule 7056 (incorporating Fed. R. Civ. P.

56(a)).  Where there are cross motions for summary judgment, "each

movant has the burden of presenting evidence to support its motion that

would allow the [court], if appropriate, to direct a verdict in its favor."

*High Tech Gays v. Def. Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir.

1990) (quoting *Barhold v. Rodriguez*, 863 F.2d 233, 236 (2d Cir. 1988)).  All

facts and reasonable inferences are viewed in the light most favorable to

the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986).

## II.    PIIC's Motion for Summary Judgment.

MEMORANDUM OF DECISION - 27

PIIC's Motion for Summary Judgment argues several different reasons why it should be granted, and generally asks the Court to determine PIIC has no duty under the Policy to defend nor to indemnify Debtor in any past, pending, or future lawsuit brought against Debtor due to its non-payment of clients' taxes. Dkt. Nos. 25, 26. The Court will address each of PIIC's contentions in turn.

A. The fact that DPS was not an Insured is not relevant.

First, PIIC asserts it was DPS' conduct, and not Debtor's, that injured Debtor's clients, and PIIC has no duties under the Policy because DPS is not a named Insured. PIIC is correct in its assertion that DPS is not an Insured covered by the Policy. *See* Dkt. No. 24-1 at 18. At the same time, PIIC did not provide any proof indicating complaints against Debtor are actually complaints against DPS. Rather, the information reviewed by the Court indicates such complaints all include causes of action based on Debtor's, and not DPS', conduct. Because the conduct at issue, at least in the mind of those filing complaints against Debtor, is Debtor's conduct, it

MEMORANDUM OF DECISION - 28

is of no moment that DPS was not an Insured under the Policy. Debtor

was clearly an Insured, the law suits named Debtor as a defendant, and

PIIC's duties to defend and indemnify will be triggered, or not, by

Debtor's potential liability for its actions.

B. <u>The Court need not, at this time, determine whether Debtor's actions were negligent or intentional in deciding whether PIIC has the duty to defend and indemnify</u>.

Second, PIIC spends considerable time in its briefing arguing that it

does not have a duty to defend nor indemnify Debtor because Debtor's

acts were not negligent, but were, instead, intentional. In doing so, PIIC

invites the Court to draw legal conclusions that are unnecessary and

inappropriate at this stage of the litigation in determining PIIC's duties to

defend and indemnify Debtor. Rather, to determine those duties, the

Court properly looks primarily to the plaintiffs' pleadings in the subject

lawsuits, and to any judgment, decision, or order issued against Debtor.

1. <u>Duty to Defend</u>.

Determinations of an insurer's duty to defend in a declaratory

judgment action are based on the allegations raised in the underlying

MEMORANDUM OF DECISION - 29

complaint. *See Millers Mut. Fire Ins. Co. of Texas v. Ed Bailey, Inc.*, 647 P.2d 1249, 1252 (Idaho 1982). To make such a determination, the Court must compare the allegations in the complaint to the terms of the applicable insurance policy. *Id.* If the allegations "in whole or in part and read broadly, reveal a potential for liability that would be covered" by the insurance policy, the insurer has a duty to defend. *Exterovich v. City of Kellogg*, 80 P.3d 1040, 1042 (Idaho 2003). At the same time, if the allegations within a complaint are not such as would be covered by the terms of an insurance policy, the insurer has no duty to defend. *See Intermountain Gas Co. v. Indus. Indemnity Co. of Idaho*, 868 P.2d 510, 516 (Idaho 1994).

As can be seen, a determination by the Court that Debtor's actions were intentional, and not negligent, would be premature. The Court's determination of whether there is a duty to defend is based upon the "potential for liability," which, in this case, exists if a particular plaintiff's allegations suggest a negligence cause of action. *See* Dkt. No. 24-1; *Exterovich*, 80 P.3d at 1042. While, eventually, it may be determined that

MEMORANDUM OF DECISION - 30

Debtor's actions were intentional and not negligent, the Court's analysis, at this point, is limited to information contained within any complaint provided for its review. *See Millers Mut. Fire Ins. Co.*, 647 P.2d at 1252.

PIIC did not provide the Court with copies of any of the complaints in the actions for which it desires a determination that there is no duty to defend Debtor. As noted above, the Court may only measure PIIC's duty to defend by comparing the terms of the Policy to the allegations of the complaints in the subject legal actions. In not providing that evidence, PIIC has not properly supported its Motion for Summary Judgment. *See High Tech Gays*, 895 F.2d at 574. PIIC's Motion for Summary Judgment concerning its duty to defend will, therefore, be denied.

2. <u>Duty to Indemnify</u>.

A determination of an insurer's duty to indemnify, which requires the Court to analyze the basis for awarded damages, typically also requires the Court to review a copy of the awarding court's judgment, order or decision. *See Deluna v. State Farm Fire and Cas. Co.*, 233 P.3d 12, 16 (Idaho 2008) (indicating that an insurer only has a duty to indemnify for

MEMORANDUM OF DECISION - 31

sums the insured was "legally obligated to pay as damages" as a result of

a covered liability).  At the same time, where an insurer has no duty to

defend a lawsuit, it also has no duty to indemnify, and the duty to

indemnify can be determined in such instances without a review of the

judgment's basis.  *See Hoyle v. Utica Mut. Ins. Co.*, 48 P.3d 1256, 1264 (Idaho

2002) (indicating that the duty to defend is broader than the duty to

indemnify, and, where a complaint does not reveal a potential for liability,

there is no duty to indemnify).  Thus, to determine whether there is a duty

to indemnify, the Court must, at least, review the complaint in the subject

lawsuit.  *See id.*  If the allegations of the complaint do not trigger a duty to

defend, the Court can determine there is no duty to indemnify.  *Id.*  On the

other hand, if an insurer has the duty to defend, the Court must then also

review the judgment in a case to determine if there is a duty to indemnify.

*See id.*; *Deluna*, 233 P.3d at 16.

   Here, PIIC did not provide the Court with copies of any complaints

or judgments.  The Court is, therefore, unable to determine whether PIIC

has a duty to indemnify Debtor in any of these actions.  PIIC would have

MEMORANDUM OF DECISION - 32

the Court simply determine Debtor's conduct is such that it would not be

covered by the Policy and there is no duty to indemnify.  The Court's role,

however, is to compare, against the Policy, the legal basis for which

damages have been awarded in a case, and then to determine whether

there is a duty to indemnify.  Because PIIC did not provide the Court the

information necessary to make that determination, PIIC's Motion for

Summary Judgment concerning its duty to indemnify will be denied.

C. PIIC has not shown that the Policy's exclusions relieve it of the
dutiy to defend and indemnify.

Third, PIIC asserts Debtor's actions trigger several of the Policy's

exclusions, and, therefore, it has no duty to defend or indemnify.  Yet, just

as in determining whether there is a duty to defend or indemnify, the

determination of whether an exclusion abrogates a duty to defend requires

a case-by-case analysis of the allegations in a complaint.  *See Kootenai*

*County*, 750 P.2d at 89–90 (quoting *State of Idaho v. Bunker Hill Co.*, 647

F.Supp. 1064, 1068 (D. Idaho 1986) (indicating insurers are to evaluate each

complaint and determine whether allegations are covered by an insurance

MEMORANDUM OF DECISION - 33

policy, or whether, in its estimation, exclusions provide a basis for

noncoverage)).

Even if PIIC provided the Court with copies of complaints against

Debtor, the insurer has the burden of proving an exclusion excepts an

insured's conduct from coverage.  *Monarch Greenback, LLC v. Monticello Ins.*

*Co.*, 118 F.Supp.2d 1068, 1078 (D. Idaho 1999); *Harman v. Nw. Mut. Life Ins.*,

429 P.2d 849, 850–51 (Idaho 1967).  Exclusions are to be interpreted strictly

and narrowly, so that an exclusion does not defeat the "very object and

purpose of the insurance."  *Miller v. Farmers Ins. Co. of Idaho*, 702 P.2d 1356,

1359 (Idaho 1985); *see also Unigard Mut. Ins. Co. v. McCarty's, Inc.*, 756

F.Supp. 1366, 1368 (D. Idaho 1988).  Had PIIC provided the Court with

copies of complaints against Debtor, it would then be required to establish

each of the elements of an alleged Policy exclusion,[12] showing Debtor's

actions, as plead in a given complaint, demonstrate there is "no potential

---

[12]  Some of these elements will likely be difficult to prove based solely on allegations in a complaint.  For example, under Exclusion E, PIIC might have to prove Debtor's conduct was "dishonest," "malicious," or "knowingly wrongful," all of which incorporate Debtor's *mens rea*, and may be difficult to prove based on the complaint.

MEMORANDUM OF DECISION - 34

for liability." *See McMinn v. Peterson*, 777 P.2d 1214, 1217–18 (Idaho Ct. App. 1989) (finding there was no duty to defend under a particular insurance policy because insurer showed that, due to a policy exclusion, there was no potential for liability under the policy).  Because PIIC did not provide the Court with copies of any complaints in support of its Motion, the Court can not analyze Debtor's conduct against the Policy's exclusions as desired by PIIC.

None of the reasons advanced by PIIC as causes to grant its Motion for Summary Judgment are sufficient grounds for the Court to do so, particularly given that PIIC did not provide the Court the information necessary to determine whether PIIC owes a duty to defend or indemnify. PIIC's Motion for Summary Judgment is, therefore, denied.

### III.    Debtor and Trustee's Motion for Summary Judgment.

Debtor and Trustee filed a Motion for Summary Judgment, seeking a determination that PIIC has a duty to defend and a duty to indemnify Debtor in all past, pending, or future lawsuits against Debtor based on its

MEMORANDUM OF DECISION - 35

clients' unpaid taxes.[13]  Dkt. Nos. 21, 22.  In support of their Motion for

Summary Judgment, Debtor and Trustee submitted copies of complaints

from nine lawsuits against Debtor.  Dkt. No. 24-3.  In addition, their

attorney, Brown, submitted two affidavits.  Dkt. Nos. 24, 37.  In the first of

those affidavits, Brown made certain statements regarding judgments

entered in actions in which he represented Debtor.  Dkt. No. 24.  With the

second affidavit, he submitted copies of judgments obtained in several

cases.  Dkt. Nos. 37-1, 37-2, 37-3, 37-4, 37-5.  PIIC moved to strike the

judgment-related statements in Brown's first affidavit, and the entirety of

his second affidavit.  Dkt. Nos. 33, 40.  Because the outcome of those

motions bear on Debtor and Trustee's Motion for Summary Judgment, the

Court addresses them here.

---

[13]  Debtor and Trustee also moved the Court to grant them a summary judgment holding that PIIC must reimburse Debtor's bankruptcy estate for fees and expenses incurred in defending against lawsuits that should have been defended by PIIC under the Policy but were not.  Dkt. No. 22.  Debtor and Trustee, however, have not asserted a counterclaim in this action against PIIC for those fees and expenses, and the issue of reimbursement was not raised in the discovery and disclosure materials on file, or any affidavits.  Summary judgment is, therefore, not appropriate on that issue.  *See* FED. R. CIV. P. 56(a), as incorporated in Rule 7056.

MEMORANDUM OF DECISION - 36

A. <u>PIIC's Motion to Strike Paragraph 3 of Brown's first affidavit</u>.

PIIC moved to strike the third paragraph of Brown's first affidavit,

which stated:

> I have also represented [Debtor] in numerous state
> court lawsuits defending against actions brought by its
> clients arising out of [Debtor's] failure to pay its clients
> [sic] federal and state payroll taxes after impounding
> funds for such taxes.  In each of those cases, [PIIC]
> refused to provide defense to [Debtor].  Judgments
> were entered against [Debtor] in several cases.  The
> total dollar amount of judgments against [Debtor] in
> Idaho cases in which I represented [Debtor] was
> $454,478.98.

Dkt. No. 24 at ¶ 3.  Because Brown did not specify the names of the

lawsuits in which he represented Debtor, the cases in which judgments

were entered, or any evidence supporting the claimed judgment amounts,

PIIC asserts his paragraph 3 statements "lack the necessary foundation for

admissibility" as established in Fed. R. Civ. P. 56(c)(4).[14]  PIIC therefore

requests the entire paragraph be stricken from the record.  Dkt. No. 34.

---

[14] Rule 7056 incorporates Fed. R. Civ. P. 56(c)(4), which provides that any
affidavit used to support a motion for summary judgment "must be made on
personal knowledge, set out facts that would be admissible in evidence, and
show that the affiant . . . is competent to testify on the matters stated."

MEMORANDUM OF DECISION - 37

In general, courts have found that, to satisfy the Fed. R. Civ. P.

56(c)(4) foundation standard, facts alleged in an affidavit must be specific,

and more than mere conclusions.  *See Perez v. Volvo Car Corp.*, 247 F.3d 303,

316–317 (1st Cir. 2001) (analyzing affidavits under the standard in former

Fed. R. Civ. P. 56(e), and finding that statements must be supported with

"particularized factual information"); *Bickerstaff v. Vassar Coll.*, 196 F.3d

435, 452 (2d Cir. 1999) ("Statements that are devoid of any specifics, but

replete with conclusions, are insufficient to defeat a properly supported

motion for summary judgment.").  Brown's statements in paragraph 3 are

not specific; they are merely unsupported conclusions.  PIIC's motion to

strike those statements from the record is, therefore, granted.

B. <u>PIIC's Motion to Strike Brown's second affidavit.</u>

Apparently recognizing the potential weaknesses in his first

affidavit, Brown submitted a second affidavit to support Debtor and

Trustee's Motion for Summary Judgment on August 16, 2011, a mere

seven days prior to the hearing on that motion.  Dkt. No. 37.  In his second

affidavit, Brown specifically lists the actions in which he previously

MEMORANDUM OF DECISION - 38

represented Debtor, and provides copies of judgments in those cases

where damages were awarded. *Id.* In other words, in the second affidavit

Brown supplies the information PIIC contended was lacking from his first

affidavit. PIIC moves to strike Brown's second affidavit, however, because

it was untimely under the requirements of Local Bankruptcy Rule

7056.1(b). Dkt. Nos. 40, 41.

Local Bankruptcy Rule 7056.1, which governs motions for summary

judgment in adversary proceedings, provides:

> (b)   Submissions and hearings
> (1)  The motion, supporting affidavits or
> declarations, a statement of undisputed
> facts, a notice of hearing, and a supporting
> brief shall be filed at least twenty-eight (28)
> days before the time fixed for the hearing.
> ****
> (2)  If the opposing party desires to file
> affidavits or other materials, that party
> shall do so at least fourteen (14) days before
> the date of the hearing. The opposing
> party shall also file a responsive brief, and
> a statement of disputed and undisputed
> facts, at least fourteen (14) days prior to the
> hearing.
> ****
> (3)  The moving party may thereafter file a

MEMORANDUM OF DECISION - 39

> reply brief not less than seven (7) days
> prior to the hearing.
> ****
> (6)  Other than as provided herein, absent
> an order of the court to the contrary for
> good cause shown, no other pleadings or
> documents shall be filed on a summary
> judgment motion.

Under this rule, Debtor and Trustee's deadline for submitting affidavits in support of their Motion for Summary Judgment was, at the latest, twenty-eight days before the August 23, 2011, hearing.  While they could submit a reply brief by August 16, 2011, filing an affidavit in support of their Motion on that date did not comply with the local rule.

Local Bankruptcy Rule 7056.1 prescribes the consequence for noncompliance with the filing timing requirements under the rule:  "the court may continue the hearing and, after notice and a reasonable time to respond, may impose costs, attorney's fees and sanctions against a party, the party's attorney, or both."  LBR 7056.1(d).  At the same time, the Court has considered striking a non-compliant affidavit in its entirety.  *See Fin. Fed. Credit, Inc v. Water B. Scott & Sons, Inc. (In re Walter B. Scott & Sons,*

MEMORANDUM OF DECISION - 40

*Inc.*), 10.3 I.B.C.R. 84, 85 (Bankr. D. Idaho 2010).

In determining the consequences for a failure to follow its local rules, the Court may consider: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the [opposing party]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id.* (quoting *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995)). When detrimental reliance or other prejudice has not been demonstrated, the Court has discretion to excuse strict compliance with the local rules. *Id.* (citing *Bell Flavors & Fragrances, Inc. v. Andrew* (*In re Loretto Winery, Ltd.*), 107 B.R. 707, 710 (9th Cir. BAP 1989)).

PIIC asserts it would be prejudiced if the Court allows Brown's second affidavit to stand because "[t]here are additional points PIIC would need to brief, and affidavits PIIC would likely need to submit, to properly respond to the new evidence introduced in the Second Affidavit of Clifford Brown." Dkt. No. 41 at 5. At the same time, PIIC notes that, if it had the ability to respond to the new evidence, it would point out that

MEMORANDUM OF DECISION - 41

none of the judgments attached to Brown's second affidavit were for negligence claims. *Id.* In other words, PIIC contends the submitted judgments do not trigger a duty to defend or indemnify. Upon review of the judgments, the Court agrees that none expressly indicate the particular cause of action which served as the basis for the damages awards. In other words, Debtor and Trustee have not connected the awarded damages to a cause of action that would be covered by the Policy. *See* Dkt. Nos. 37-1, 37-2, 37-3, 37-4, 37-5.

While the timing of Brown's second affidavit violated Local Bankruptcy Rule 7056.1, the information provided in that affidavit does not prejudice PIIC because it does nothing to advance Debtor and Trustee's Motion. The Court's other considerations, particularly the public policy favoring disposition of cases on their merits, support the Court excusing strict compliance with the local rule in this case. PIIC's motion to strike Brown's second affidavit is, therefore, denied.

C. Duty to defend.

An insurer must assume the defense of a particular claim if, in the

MEMORANDUM OF DECISION - 42

claim's complaint, the allegations "in whole or in part and read broadly,

reveal a potential for liability that would be covered" by the insurance

policy. *Exterovich*, 80 P.3d at 1042. If there is any doubt as to whether an

obligation to defend exists, that doubt must be resolved by the insurer in

favor of the insured. *Millers Mut. Fire Ins. Co. of Tex.*, 647 P.2d at 1252.

The responsibility of initially determining whether there is a duty to

defend rests with the insurer.[15] *See Kootenai Cnty. v. W. Cas. & Sur. Co.*, 750

P.2d 87, 89–90 (Idaho 1988) (quoting *Bunker Hill Co.*, 647 F.Supp. at 1068

("The proper procedure for the insurer to take is to evaluate the claims and

determine whether an arguable potential exists for a claim covered by the

policy . . . ."). In making that determination, an insurer must look not only

to the pleaded causes of action, but also to the alleged facts. *Intermountain*

---

[15] PIIC, in its Memorandum in Opposition to Debtor and Trustee's
Motion, argues there is an additional requirement to trigger the duty to defend.
Dkt. No. 36 at 16–17. Namely, PIIC asserts an insured must provide an insurer a
copy of the complaint, and must request the tender of the duty to defend. *Id.* In
spite of PIIC's citation to *Hoyle*, 137 Idaho 367, 371–72, for that proposition, the
decisions explaining the duty to defend include no such requirement. Rather,
the case law indicates "[t]he duty to defend arises upon the filing of a
complaint," as long as the complaint alleges a liability potentially covered by the
applicable insurance policy. *Hoyle*, 137 Idaho at 371–72.

MEMORANDUM OF DECISION - 43

*Gas Co.*, 868 P.2d at 513 (quoting *Standlee v. St. Paul Fire & Marine Ins. Co.*,

693 P.2d 1101, 1103 (Idaho Ct. App. 1984)).  While the facts alleged in a

given complaint should be considered, the "facts behind" the complaint

should not.  *Hoyle*, 48 P.3d at 1262.  Even if the facts behind a particular

complaint might indicate a liability covered by an insurance policy, those

facts are irrelevant if not alleged within the complaint.  *Id.*

Debtor and Trustee, however, assert that consideration of facts

outside of individual complaints is appropriate here because the Policy

definition of "claim" includes:

> All CLAIMS arising out of the same act, error or
> omission, or acts, errors or omissions which are
> logically or causally connected in any way shall
> be deemed as a single CLAIM.  All such CLAIMS
> whenever made shall be considered first made on
> the date on which the earliest CLAIM arising out
> of such act, error or omission was first made and
> all such CLAIMS are subject to the same limits of
> liability and deductible.

Dkt. No. 24-1.  Debtor and Trustee argue the Policy requires the

aggregation of all claims leveled against Debtor for its non-payment of

clients' taxes because those claims are "logically or causally" connected

MEMORANDUM OF DECISION - 44

due to similar fact patterns, and a "review of all allegations, read broadly, should have revealed a potential for liability covered by the Policy thereby triggering its duty to defend against all of these related claims."  Dkt. No. 22 at 11.

Debtor and Trustee, however, misread the standard for determining whether there is a duty to defend.  The duty is not triggered by a broad review of all allegations contained in multiple complaints, but, rather, by a broad review of all allegations in each, individual complaint.  *See Hoyle*, 48 P.3d at 1260–61.  In particular, reading an allegation of negligence into a complaint where no such allegation has been made would require "look[ing] beyond the words of the complaint to determine if a possibility of coverage exists," and is inappropriate in determining a duty to defend. *See Hoyle*, 48 P.3d at 1262; *Constr. Mgmt. Sys., Inc. v. Assurance Co. of America*, 23 P.3d 142, 684 (Idaho 2001).  The Court will therefore review each complaint to determine whether PIIC had a duty to defend Debtor in each case.

The Policy is an errors and omissions policy covering damages

MEMORANDUM OF DECISION - 45

incurred "by reason of a negligent act, error or omission in the

performance of PROFESSIONAL SERVICES."  Dkt. No. 24-1

(capitalization in original).  An act or acts amount to negligence when

there is "(1) a duty, recognized by law, requiring a defendant to conform

to a certain standard of conduct; (2) a breach of that duty; (3) a causal

connection between the defendant's conduct and the resulting injuries;

and (4) actual loss or damage." *Alegria v. Payonk*, 619 P.2d 135, 137 (Idaho

1980) (citing *Brizendine v. Nampa Meridian Irrigation Distr.*, 548 P.2d 80, 83

(Idaho 1976)).  Those elements, if pleaded in a complaint, would trigger

PIIC's duty to defend against Debtor's clients' claims.

Clearly, neither negligence, nor any of the elements of a negligence

claim, were pleaded in the complaints in *Arrow Rock Int'l, Inc. v.

PayrollAmerica, Inc.*; *BluWater Consulting, LLC v. PayrollAmerica, Inc.*;

*Resources Online LLC v. PayrollAmerica, Inc.*; and *Orca Bay Seafoods, Inc. v.

PayrollAmerica, Inc.*  As as result, PIIC did not have a duty to defend

Debtor in those four cases.  However, PIIC had a duty to defend Debtor in

the following cases:

MEMORANDUM OF DECISION - 46

1.  *Viking Bank v. Payroll America, Inc.* [sic]

The Viking Bank Plaintiffs' complaint contains basic allegations that,

if viewed broadly, could state a claim for negligence against Debtor.

While those assertions are alleged under a "breach of fiduciary duty"

cause of action, the allegations are essentially the same as those in the

Idaho case law for negligence.  The Viking Bank Plaintiffs allege Debtor

owed them a duty, breached that duty, and the breach was the cause of

their damages.  Because the complaint contains basic negligence

allegations, or at least, allegations of fact which, if read broadly, reveals a

potential for a negligence allegation, PIIC owed a duty to defend Debtor

against the Viking Bank Plaintiffs' claim.[16]

---

[16]  It is noteworthy that the Viking Bank complaint also alleges a "Violation of the Washington Consumer Protection Act RCW 19.86. *et. seq.*"  As such, Policy Exclusion F, which excludes from coverage any claim arising out of "any actual or alleged violations" of a state deceptive trade practice law, may apply.  At the same time, the burden of showing the exclusion applies is PIIC's. PIIC has not sufficiently proved to the Court that the exclusion should apply. While an alleged violation of the law is clearly included in the complaint, there is no indication that the conduct alleged as being in violation of the Washington Consumer Protection Act is the same conduct the Viking Bank Plaintiffs allege is negligence.  The Court can not make a determination there is no potential

(continued...)

MEMORANDUM OF DECISION - 47

2.  *Housing Authority of Thurston County v. PayrollAmerica, Inc.*

Both the breach of fiduciary duty and the professional negligence

causes of action in HCAT's complaint triggered a duty on behalf of PIIC to

defend Debtor as to those claims.  While the breach of fiduciary duty cause

of action asserts only that there was a duty and a breach, the complaint's

discussion of damages, read broadly, indicates the breach of that duty

proximately caused HATC's damages.  This collection of allegations is

sufficient to show Debtor's potential negligence liability.  In addition, the

more specific professional negligence cause of action, and supporting

allegations, indicate Debtor's liability potentially covered by the Policy.

PIIC therefore had a duty to defend Debtor against those claims.

3.  *Radix Construction, Inc. v. PayrollAmerica, Inc.*

Radix specifically alleges Debtor was negligent in its complaint.

Under that cause of action, Radix pleaded the classic negligence elements

---

[16](...continued)
liability for the conduct providing the basis for the negligence allegations.
Similar violations of state deceptive trade practice law were also made in *Housing
Authority of Thurston County v. PayrollAmerica, Inc.* and *At Home Care LLC v.
Payroll America, Inc.* [sic].

MEMORANDUM OF DECISION - 48

of duty, breach, causation, and damages.  PIIC had a duty to defend

against this complaint.

>    4.  *C.C. Filson Co. v. PayrollAmerica, Inc.*

Filson pleaded a negligence cause of action, under which it alleged

the classic negligence elements.  PIIC had a duty to defend Debtor in this

suit.

>    5.  *At Home Care LLC v. Payroll America, Inc.* [sic]

At Home Care sufficiently pleaded negligence in its negligence and

breach of fiduciary duties causes of action to trigger PIIC's duty to defend.

>    D.  Duty to indemnify.

The duty to indemnify an insured is a separate, independent duty

from the duty to defend.  *Hoyle*, 48 P.3d at 1264; *Intermountain Gas Co.*, 868

P.2d at 513.  The duty to defend is much broader, and is invoked by the

mere potential that a complaint alleges liabilities covered by an insured's

policy.  *Hoyle*, 48 P.3d at 1264.  The duty to indemnify, on the other hand,

is typically triggered only when a determination has been made that an

insurer is obligated under a particular policy to pay damages on a

MEMORANDUM OF DECISION - 49

particular claim.  *See Deluna*, 233 P.3d at 16.  However, if there is no duty

to defend a particular claim, there is also no duty to indemnify, which can

be determined even if a claim has not yet been resolved.  *Hoyle*, 48 P.3d at

1264.

Here, PIIC would have no duty to defend, and, therefore, no duty to

indemnify Debtor for any damages awarded by the courts in *Arrow Rock*

*Int'l, Inc. v. PayrollAmerica, Inc.*; *BluWater Consulting, LLC v. PayrollAmerica,*

*Inc.*; *Resources Online LLC v. PayrollAmerica, Inc.*; and *Orca Bay Seafoods, Inc.*

*v. PayrollAmerica, Inc.*

In addition, while the Court was provided copies of judgments for

*The Masonry Center, Inc. v. PayrollAmerica, Inc,* and *HSI Corp. v.*

*PayrollAmerica, Inc.*, it was not provided copies of the complaints in those

actions, and neither of the judgments adequately ties the damages

awarded against Debtor to any specific causes of action.  Because the

Court cannot determine whether any damages were awarded for Debtor's

alleged negligence, the Court declines to hold, at this summary judgment

stage, that PIIC has a duty to indemnify Debtor in either of those cases.

MEMORANDUM OF DECISION - 50

In those actions where copies of the filed complaint have been submitted to this Court, and where those complaints indicate potential negligence claims, the Court would need to review the trial court's judgment, order, or decision to determine the basis for any awarded damages before determining whether PIIC had a duty to indemnify Debtor. The Court has not been given any such information for those cases. Based on the record before it, the Court is unable to make a summary judgment determination of the duty to indemnify in *Viking Bank v. Payroll America, Inc.* [sic]; *Hous. Auth. of Thurston Cnty. v. PayrollAmerica, Inc.; Radix Constr., Inc. v. PayrollAmerica, Inc.; C.C. Filson Co. v. PayrollAmerica, Inc.;* and *At Home Care LLC v. Payroll America, Inc.* [sic].

### Conclusion

PIIC did not support its Motion for Summary Judgment with the evidence necessary for the Court to determine whether PIIC has a duty to defend or indemnify in any of the actions brought against Debtor. Debtor and Trustee, however, provided some of that evidence in support of their cross-Motion for Summary Judgment. Via motions to strike, PIIC objected

MEMORANDUM OF DECISION - 51

to some of Debtor and Trustee's evidence.  The Court grants PIIC's motion

to strike paragraph three of Brown's first affidavit, but denies PIIC's

motion to strike Brown's second affidavit.

Based upon the undisputed facts, in reviewing Debtor and Trustee's

Motion for Summary Judgment, the Court grants a partial summary

judgment in their favor, and concludes that PIIC had a duty to defend in

*Viking Bank v. Payroll America, Inc.* [sic]; *Hous. Auth. of Thurston Cnty. v.*

*PayrollAmerica, Inc.; Radix Constr., Inc. v. PayrollAmerica, Inc.; C.C. Filson Co.*

*v. PayrollAmerica, Inc.;* and *At Home Care LLC v. Payroll America, Inc.* [sic].

On the other hand, the Court concludes that PIIC did not have a duty to

defend in *Arrow Rock Int'l, Inc. v. PayrollAmerica, Inc.; BluWater Consulting,*

*LLC v. PayrollAmerica, Inc.; Resources Online LLC v. PayrollAmerica, Inc.;* and

*Orca Bay Seafoods, Inc. v. PayrollAmerica, Inc.*

The Court also grants a partial summary judgment to Debtor and

Trustee determining PIIC did not have a duty to indemnify Debtor in

*Arrow Rock Int'l, Inc. v. PayrollAmerica, Inc.; BluWater Consulting, LLC v.*

*PayrollAmerica, Inc.; Resources Online LLC v. PayrollAmerica, Inc.;* and *Orca*

MEMORANDUM OF DECISION - 52

*Bay Seafoods, Inc. v. PayrollAmerica, Inc.* In the remaining actions, where the Court found a duty to defend, but lacks adequate judgment-related information, there is a remaining factual question regarding whether there is a duty to indemnify, and, thus, summary judgment is denied. Summary judgment will also be also denied to Debtor and Trustee as to *The Masonry Center, Inc. v. PayrollAmerica, Inc,* and *HSI Corp. v. PayrollAmerica, Inc.* actions, where the Court was not provided sufficient information to determine a duty to defend or indemnify.

A separate order implementing this decision will be entered.

Dated:  September 19, 2011

Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 53